UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PEIXUAN WANG, et al.,

     Plaintiffs,

        v.

UNITED STATES OF AMERICA,

     Defendant.

Civil Action No. 23-2810 (TJK)

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 3

   I.      The EB-5 Visa Program .................................................................... 3

   II.     The EB-5 Regional Center Program ................................................. 3

        A.    Statutory Authority for the Regional Center Program ............... 3

        B.    Regulatory Requirements for Regional Centers ........................ 4

   III.    Visa Petition Process for Immigrant Investors ............................... 5

   IV.   Plaintiffs' Investments in the Walsh Projects and Their Corresponding I-526 Petitions ................................................................................................ 6

   V.     Plaintiffs' Claims in This Action .................................................... 7

   VI.   The Investors' Claims in the *Li* Complaint in Florida and *Chen* Complaint in the District of Columbia ............................................................................... 8

LEGAL STANDARD ..................................................................................................... 9

   I.      Rule 12(b)(1) ................................................................................... 9

   II.     Rule 12(b)(6) ................................................................................. 10

ARGUMENT ................................................................................................................ 11

   I.      Plaintiffs Failed to Exhaust Their Administrative Remedies ............... 11

   II.     This Lawsuit is Barred by Sovereign Immunity ................................. 13

        A.    The FTCA's Limited Waiver of Sovereign Immunity ............. 13

        B.    The Discretionary Function Exception Bars Plaintiffs' Claims .............. 13

        C.    The Challenged Acts Are Discretionary in Nature ................... 17

        D.    The Challenged Acts Are Based on Considerations of Public Policy ...... 18

   III.   Plaintiffs' Claims Are Barred by the FTCA's Misrepresentation Exception ....... 21

   IV.   Plaintiffs Fail to Identify Any Analogous Tort Duties Under Local Law ........... 22

   V.     The Complaint is Time Barred ...................................................... 25

CONCLUSION.................................................................................................................... 31

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Am. Nat'l Ins. Co. v. FDIC*,
  642 F.3d 1137 (D.C. Cir. 2011) ................................................................... 9

*Art Metal-USA, Inc. v. United States*,
  753 F.2d 1151 (D.C. Cir. 1985) ................................................................. 23

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................... 10

*Baer v. United States*,
  722 F.3d 168 (3d Cir. 2013) ...................................................................... 15

*Banneker Ventures, LLC v. Graham*,
  798 F.3d 1119 (D.C. Cir. 2015) ................................................................. 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................ 10, 11

*Bell v. Dep't of Def.*,
  Civ. A. No. 16-2406, 2018 U.S. Dist. LEXIS 166068 (D.D.C. Sep. 27, 2018) ...................... 11

*Berkovitz v. United States*,
  486 U.S. 531 (1988) ............................................................................ 18, 19

*Block v. Neal*,
  460 U.S. 289 (1983) ................................................................................... 22

*Budik v. Ashley*,
  36 F. Supp. 3d 132 (D.D.C. 2014) ............................................................. 11

*Cameron v. Thornburgh*,
  983 F.2d 253 (D.C. Cir. 1993) ................................................................... 30

*Dep't of Army v. Blue Fox, Inc.*,
  525 U.S. 255 (1999) ................................................................................... 13

*Dichter-Mad Family Partners, LLP v. United States*,
  709 F.3d 749 (9th Cir. 2013) ..................................................................... 15

*Donahue v. United States*,
  870 F. Supp. 2d 97 (D.D.C. 2012) ...................................................... passim

*EEOC v. St. Francis Xavier Parochial Sch.*,
  117 F.3d 621 (D.C. Cir. 1997) ................................................................... 11

iii

*FDIC v. Meyer,*
  510 U.S. 471 (1994)..................................................................................................... 13

*Feng Wang v. Pompeo,*
  Civ. A. No. 18-1732, 2020 WL 1451598 (D.D.C. Mar. 25, 2020)............................. 3

*Fitzgerald v. Barnstable Sch. Comm.,*
  555 U.S. 246 (2009)..................................................................................................... 11

*GAF Corp. v. United States,*
  818 F.2d 901 (D.C. Cir. 1987)..................................................................................... 12

*Gen. Motors Corp. v. EPA,*
  363 F.3d 442 (D.C. Cir. 2004)....................................................................................... 9

*Gross v. United States,*
  771 F.3d 10 (D.C. Cir. 2014)....................................................................................... 13

*Hagan v. United States,*
  197 F. Supp. 3d 30 (D.D.C. 2016)......................................................................... 25, 26

*Hagan v. United States,*
  275 F. Supp. 3d 252 (D.D.C. 2017)....................................................................... 26, 28

*Hardin v. Jackson,*
  625 F.3d 739 (D.C. Cir. 2010)..................................................................................... 26

*Hernandez v. United States,*
  34 F. Supp. 3d 1168 (D. Colo. 2014)........................................................................... 22

*Holland v. Florida,*
  560 U.S. 631 (2010)..................................................................................................... 26

*Hornbeck Offshore Transp., LLC v. United States,*
  569 F.3d 506 (D.C. Cir. 2009)............................................................................... 23, 24

*Hulli v. Mayorkas,*
  549 F. Supp. 3d 95 (D.D.C. 2021)................................................................................. 4

*In re Swine Flu Immunization Prod. Liab. Litig.,*
  880 F.2d 1439 (D.C. Cir. 1989)................................................................................... 28

*Indian Towing Co. v. United States,*
  350 U.S. 61 (1955)....................................................................................................... 24

*Jackson v. Modly,*
   949 F.3d 763 (D.C. Cir. 2020) ........................................................................ 25

*Johnson v. Sawyer,*
   47 F.3d 716 (5th Cir. 1995) ........................................................................... 25

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
   511 U.S. 375 (1994) ......................................................................................... 9

*Kugel v. United States,*
   947 F.2d 1504 (D.C. Cir. 1991) ...................................................................... 13

*Lewis v. United States,*
   83 F. Supp. 3d 198 (D.D.C. 2015) ............................................................ 13, 23

*Loughlin v. United States,*
   393 F.3d 155 (D.C. Cir. 2004) ........................................................................ 13

*Loumiet v. United States,*
   828 F.3d 935 (D.C. Cir. 2016) ........................................................................ 17

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) ......................................................................................... 9

*Macharia v. United States,*
   334 F.3d 61 (D.C. Cir. 2003) .......................................................................... 14

*McNeil v. United States,*
   508 U.S. 106 (1993) ................................................................................... 11, 12

*Menominee Indian Tribe of Wisc. v. United States,*
   136 S. Ct. 750 (2016) ............................................................................... 26, 29

*Millbrook v. United States,*
   569 U.S. 50 (2013) ......................................................................................... 21

*Molchatsky v. United States,*
   713 F.3d 159 (2d Cir. 2013) ........................................................................... 15

*Montes v. Janitorial Partners, Inc.,*
   859 F.3d 1079 (D.C. Cir. 2017) ...................................................................... 25

*N.Y. Republican State Comm. v. SEC,*
   799 F.3d 1126 (D.C. Cir. 2015) ...................................................................... 26

*Patel v. Phillips,*
    933 F. Supp. 2d 153 (D.D.C. 2013) ...................................................................... 30

*Path America KingCo LLC v. Dep't of Homeland Sec.,*
    426 F. Supp. 3d 770 (W.D. Wa. 2019) ................................................................. 20

*R.J. Reynolds Tobacco Co. v. Dep't of Agric.,*
    130 F. Supp. 3d 356 (D.D.C. 2015) ...................................................................... 11

*Reiff v. United States,*
    107 F. Supp. 3d 83 (D.D.C. 2015) ........................................................................ 10

*Sanchez-Mercedes v. Bureau of Prisons,*
    453 F. Supp. 3d  (D.D.C. 2020) ........................................................................... 12

*Scanwell Labs., Inc. v. Thomas,*
    521 F.2d 941 (D.C. Cir. 1975) .............................................................................. 21

*Scolaro v. D.C. Bd. of Elections & Ethics,*
    104 F. Supp. 2d 18 (D.D.C. 2000) ........................................................................ 10

*Settles v. U.S. Parole Comm'n,*
    429 F.3d 1098 (D.C. Cir. 2005) .............................................................................. 9

*Sexton v. United States,*
    832 F.2d 629 (D.C. Cir. 1987) .............................................................................. 26

*Shuler v. United States,*
    531 F.3d 930 (D.C. Cir. 2008) ........................................................................ 14, 17

*Sloan v. Dep't of Hous. & Urban Dev.,*
    236 F.3d 756 (D.C. Cir. 2001) ................................................................... 16, 17, 18

*Tri-State Hosp. Supply Corp. v. United States,*
    341 F.3d 571 (D.C. Cir. 2003) .............................................................................. 13

*United States v. Gaubert,*
    499 U.S. 315 (1991) ......................................................................................... 14, 16

*United States v. Kwai Fun Wong,*
    575 U.S. 402 (2015) .............................................................................................. 25

*United States v. Neustadt,*
    366 U.S. 696 (1961) .............................................................................................. 21

*United States v. S.A. Empresa de Viacao Aerea Rio Grandense ("Varig Airlines"),*
  467 U.S. 797 (1984) ............................................................................................ 14, 17, 19

*United States v. Shearer,*
  473 U.S. 52 (1985) ............................................................................................ 22

*Ward v. D.C. Dep't of Youth Rehab. Servs.,*
  768 F. Supp. 2d 117 (D.D.C. 2011) ............................................................................................ 11

*Warren v. CIA,*
  210 F. Supp. 3d 199 (D.D.C. 2016) ............................................................................................ 25, 26

*Williams v. United States,*
  Civ. A. No. 17-0783, 2017 WL 11493266 (D.D.C. Nov. 1, 2017) ................................... passim

*Zelaya v. United States,*
  781 F.3d 1315 (11th Cir. 2015) ............................................................................................ 15, 24

**Statutes**

8 U.S.C. §
  1153(b)(5) ............................................................................................ 3, 4, 5
  1153(b)(5)(E) ............................................................................................ 4
  1154(a)(1)(H) ............................................................................................ 5
  1186b ............................................................................................ 6
  1357(b) ............................................................................................ 20

15 U.S.C. § 78u(a)(1) ............................................................................................ 16

28 U.S.C. §
  1346 ............................................................................................ 1
  1402(b) ............................................................................................ 30
  2401(b) ............................................................................................ 11, 12
  2675(a) ............................................................................................ 12
  2680 ............................................................................................ 24
  2680(a) ............................................................................................ 14

Pub. L. No.
  101-649 ............................................................................................ 3
  102-395 ............................................................................................ 3
  117-103 ............................................................................................ 4

**Rules**

Federal Rules of Civil Procedure 12(b)(1) .................................................................... 1, 9, 10

Rule 12(b)(6) ................................................................................................................ 10, 11

**Regulations**

8 C.F.R. §
    204.6(a) .................................................................................................................... 5
    204.6(j) .................................................................................................................. 5, 6
    204.6(m)(3)-(6) ...................................................................................................... 17
    204.6(m)(6) ........................................................................................................ 4, 19
    204.6(m)(6)(ii) ............................................................................................. 5, 18, 19
    204.6(m)(6)(v) ........................................................................................................ 5
    216.6 ....................................................................................................................... 6
    287.5(a)(2) ............................................................................................................ 20

Pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6), the United States of America ("Defendant"), by and through undersigned counsel, respectfully moves to dismiss Plaintiffs' Complaint.

## INTRODUCTION

Plaintiffs are twenty-six Chinese citizens who sought visa classification as immigrant investors through the EB-5 Immigrant Investor Program (the "EB-5 visa program"). Plaintiffs contend they are among a larger group of victims of a fraud scheme involving the Palm House Hotel and the Royal Palm Town Center, development projects in Palm Beach, Florida (collectively, the "Walsh Projects"). Plaintiffs assert their investments were supposed to have been held in escrow while U.S. Citizenship and Immigration Services ("USCIS") adjudicated their I-526 immigrant visa petitions. Instead, the conspirators behind the Walsh Projects allegedly stole the funds and defrauded the foreign investors out of millions of dollars.

In a separate lawsuit filed in the Southern District of Florida in November 2016, a larger group of Chinese and Iranian investors, which may include some of the same Plaintiffs in this action, sued the conspirators behind the Walsh Projects. *See Li v. Walsh*, Civ. A. No. 16-81871 (S.D. Fla.). In the *Li* suit, which is still being litigated in Florida, the foreign investors claimed that the Walsh Projects conspirators defrauded them out of $50 million.

Plaintiffs in this action sue the United States of America under the Federal Tort Claims Act, 28 U.S.C. § 1346 ("FTCA"). Plaintiffs claim the United States is separately liable for the loss of their investments in the Walsh Projects because USCIS employees acted with negligence in administering the EB-5 visa program. USCIS employees were allegedly negligent and breached their fiduciary duty to the investors because they allowed the United States Regional

Economic Development Authority Regional Center ("USREDA")[1] and the South Atlantic Regional Center (also called "SARC") to continue operating until December 2019 despite purported red flags of fraud and irregularities at the Walsh Projects and purported knowledge of fraud and misconduct by USREDA and the South Atlantic Regional Center. In 2020, thirteen Chinese investors brought a nearly identical lawsuit in this District against Defendant under the same theories. *See Chen v. United States*, Civ. A. No. 20-0058 (RC) (D.D.C.).

The Court should dismiss the Complaint for many reasons. First, the Court lacks subject matter jurisdiction because Plaintiffs failed to exhaust their administrative remedies. Second, the claims are barred by sovereign immunity for three separate reasons: (1) Plaintiffs fail to identify government conduct on the part of USCIS's employees that violated compulsory duties or that was not susceptible to policy analysis, and as such the discretionary function exception bars the claims; (2) Plaintiffs claims are barred by the FTCA's misrepresentation exception; and (3) Plaintiffs fail to identify an analogous state tort cause of action for the two causes of action they assert against the United States. Third, even if Plaintiffs had exhausted their administrative remedies, the Complaint is still time barred. Finally, this District is an improper venue for this action. For the above reasons, the Court should dismiss this case.

---

[1] Plaintiffs refer to USREDA as a regional center, but USCIS records do not show USREDA as either an approved or terminated regional center over which USCIS had authority. *See* https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/eb-5-immigrant-investor-regional-centers/approved-eb-5-immigrant-investor-regional-centers and https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/eb-5-immigrant-investor-regional-centers/regional-center-terminations (last accessed Jan. 31, 2024).

## BACKGROUND

I.    **The EB-5 Visa Program**

The Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, created a fifth employment-based visa preference category (known as "EB-5"), which makes visas available to qualified immigrant investors who have invested or are actively in the process of investing in a new commercial enterprise and satisfy the applicable job creation requirements. Immigration and Nationality Act ("INA") § 203(b)(5), 8 U.S.C. § 1153(b)(5). Through the EB-5 visa program, immigrant investors can obtain lawful permanent residency in the United States for themselves, their spouses, and their children. INA § 203(b)(5), (d), 8 U.S.C. § 1153(b)(5), (d). "Congress established the EB-5 program to stimulate the U.S. economy by giving immigrant investors the opportunity to permanently live and work in the United States after they have invested in a new commercial enterprise[.]" Compl. ¶ 16. The INA limits the number of EB-5 visas issued each year. *See Feng Wang v. Pompeo*, Civ. A. No. 18-1732, 2020 WL 1451598, at *1 (D.D.C. Mar. 25, 2020).

II.   **The EB-5 Regional Center Program**

In 1992, Congress expanded the allowable measure of job creation for the EB-5 category by launching the Immigrant Investor Pilot Program (now the "Regional Center Program"). "EB-5 visa programs administered by a Regional Center provide more flexibility, because the immigrant investor who invests in such a program is permitted to take credit not only for direct jobs created in the NCE but also 'indirect jobs' created outside the NCE." Compl. ¶ 18.

A.    **Statutory Authority for the Regional Center Program**

The statutory authority for the Regional Center Program that the South Atlantic Regional Center was designated under derives from Section 610 of the Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1993, Pub. L. No. 102-395,

106 Stat. 1828 (1992), as amended ("Appropriations Act"). Section 610(a) of that statute authorizes the Department of Homeland Security (the "Department") to designate "regional center[s] in the United States . . . for the promotion of economic growth, including increased export sales, improved regional productivity, job creation, or increased domestic capital investment." Neither this legislation nor the INA prescribes a course of action for USCIS to monitor, inspect, or even terminate regional centers or the projects associated with them.[2]

## B.     Regulatory Requirements for Regional Centers

The requirements for the South Atlantic Regional Center to maintain eligibility in the Regional Center Program are set forth at 8 C.F.R. § 204.6(m)(6). To continue to participate in the program, the South Atlantic Regional Center must have: (A) continued to the meet the requirements of Section 610(a) of the Appropriations Act (i.e., promote economic growth, including increased export sales, improved regional productivity, job creation, and increased domestic capital investment); (B) provided USCIS with updated information annually (by filing the Form I-924A, "Annual Certification of Regional Center"), or as otherwise requested by

---

[2]       The Regional Center Program was a "pilot program" that faced short-term "sunset dates," and, as a result, Congress had to frequently reauthorize the program. Congress ultimately allowed it to lapse at the end of June 2021. *See Hulli v. Mayorkas*, 549 F. Supp. 3d 95, 98 (D.D.C. 2021) (describing this history)). On March 14, 2022, as part of the Consolidated Appropriations Act of 2022, Congress presented the EB-5 Reform and Integrity Act of 2022 ("RIA"), Pub. L. No. 117-103, Div. BB, 136 Stat. 1070 (2022) to the President, who signed it into law the next day. The legislation repealed the previous statutory authorization, reauthorized the program under a new statutory scheme and significantly reformed the regional center program. 8 U.S.C. § 1153(b)(5)(E)(i); *see id.* § 1153(b)(E) (discussing the new rules and procedures for regional centers and associated investors). Among other things, the legislation imposed many new reporting and eligibility requirements on regional centers as well as persons involved with regional centers and imposed a requirement to pay an annual fee to remain designated. *See* 8 U.S.C. § 1153(b)(5)(E), (G), (H), (I), (J)(ii). This legislation was not in effect at the time of the allegations in the Complaint.

USCIS, to demonstrate that it continued to promote economic growth; and C) pay the fee associated with the Form I-924A.

As relevant to this case, 8 C.F.R. § 204.6(m)(6)(ii) provides:

(ii) USCIS will issue a notice of intent to terminate the designation of a regional center in the program if:

(A) A regional center fails to submit the information required in paragraph (m)(6)(i)(B) of this section [i.e., filing the Form I-924A or a required Form I-924 amendment], or pay the associated fee; or

(B) USCIS determines that the regional center no longer serves the purpose of promoting economic growth, including increased export sales, improved regional productivity, job creation, and increased domestic capital investment.

Additionally, "USCIS will notify the regional center of the final decision. If USCIS determines that the regional center's participation in the program should be terminated, USCIS will state the reasons for termination." 8 C.F.R. § 204.6(m)(6)(v).

## III.   <u>Visa Petition Process for Immigrant Investors</u>

Foreign investors seeking EB-5 visas first file a petition (a "Form I-526") with USCIS seeking classification as an EB-5 investor. 8 U.S.C. § 1154(a)(1)(H); 8 C.F.R. § 204.6(a). Investors must prove that they meet the statutory and regulatory criteria, including showing they have invested or are actively in the process of investing the required amount of capital in a new commercial enterprise, that the investment funds were obtained through lawful means, and that the new commercial enterprise will create at least ten qualifying jobs. 8 U.S.C. § 1153(b)(5); 8 C.F.R. § 204.6(j). "Upon approval of the I-526, the immigrant investor may either: (1) file the appropriate form to adjust their status to a conditional permanent resident within the United States; or (2) file an application to obtain an EB-5 visa for admission to the United States." Compl. ¶ 20. "Upon the approval of the application or upon entry into the United States with an EB-5 immigrant visa, the EB-5 investor and derivative family members will be granted

conditional permanent residency for a two-year period." *Id*. Ultimately, if the applicable requirements have been satisfied, USCIS removes the conditions and the immigrants become lawful permanent residents of the United States without conditions. INA § 216A; 8 U.S.C. § 1186b; 8 C.F.R. § 216.6.

## IV. Plaintiffs' Investments in the Walsh Projects and Their Corresponding I-526 Petitions

Plaintiffs are twenty-six Chinese citizens who sought EB-5 visa classification by filing Form I-526 petitions. Plaintiffs assert they invested a minimum of $500,000, plus an administrative fee of between $40,000 and $60,000, in either of the Walsh Projects located in Florida. Compl. ¶¶ 2-4. The Walsh Projects were associated with USREDA and the South Atlantic Regional Center. *Id*. ¶ 7. The Walsh Projects conspirators allegedly claimed that investing in the projects would qualify the investors for EB-5 visas and put the investors and their children on a path to United States residency. *Id*. ¶ 23. "As is customary in the EB-5 industry, the Plaintiffs' funds were supposed to be held in suspense or escrow unless and until their I-526 immigration petitions . . . were approved by [USCIS]." *Id*. ¶ 5. USREDA, the South Atlantic Regional Center, and their affiliates allegedly promised to return Plaintiffs' investments in the event their I-526 petitions were denied by USCIS. *Id*. ¶ 36.

Plaintiffs filed I-526 petitions with USCIS and all "were denied by USCIS for failure to establish, by a preponderance of the evidence, that the I-526s complied with the applicable legal requirements." *Id*. ¶ 46-47. "USCIS cited the following deficiencies in the denials for each of the Plaintiffs' I-526 petitions: (1) inconsistencies in the documents; (2) insufficient number of full-time positions created by the project; (3) dispute over ownership of the project's property; and (4) insufficient evidence of bridge financing." *Id*. ¶ 48.

**V.**     **Plaintiffs' Claims in This Action**

Plaintiffs claim they are among more than 100 foreign investors who became victims of the fraud involving the Walsh Projects. *Id.* ¶ 2. Plaintiffs' investments were supposed to be used for the construction and development of the Walsh Projects, but the conspirators behind the projects allegedly used the funds for unlawful purposes unrelated to the creation of jobs at the Walsh Projects. *Id.* ¶ 5.

The Complaint further alleges that the Walsh Projects fraud "received significant media coverage, led to enforcement actions by the [Securities and Exchange Commission ('SEC')], criminal indictments of its promoters, and civil judgments for damages." *Id.* ¶ 2. Plaintiffs claim that collectively they lost over $13 million—out of more than $60 million in total that EB-5 investors lost because of the Walsh Projects fraud alleged in the Complaint. *Id.* ¶ 3.

Plaintiffs claim that the United States is liable for the financial losses they suffered by investing in the projects because USCIS's employees acted with negligence in administering the EB-5 program. *Id.* ¶ 59-63. Plaintiffs assert USCIS had a duty to exercise reasonable care and it breached that duty because USCIS employees failed to act after having actual knowledge of "red flags" of fraud and irregularities at USREDA and the South Atlantic Regional Center. *Id.* ¶ 60. Plaintiffs further claim that USCIS's employees assumed the role of fiduciary with respect to each Plaintiff by taking control over their I-526 petitions and that they breached their fiduciary duties. *Id.* ¶¶ 65-68.

Plaintiffs allege that they have exhausted their administrative remedies and "duly filed Form 95 with USCIS in August 2021 to place Defendant on notice of their claims but have not received any notice of any disposition of that notice." *Id.* ¶¶ 10, 15.

**VI.    The Investors' Claims in the *Li* Complaint in Florida and *Chen* Complaint in the District of Columbia**

On November 14, 2016, a group of nearly sixty Chinese and Iranian investors brought

suit in the Southern District of Florida against a number of individuals and entities, including the

South Atlantic Regional Center, associated with the Palm House Hotel. *See Li v. Walsh*, Civ. A.

No. 16-81871 (S.D. Fla.). On August 30, 2017, the *Li* plaintiffs filed an Amended Complaint.

*See* Def.'s Ex. 1 (the "*Li* Amended Complaint").[3]

As in the instant Complaint, the Chinese investors in *Li* alleged that they had been

defrauded by the developers of the Palm House Hotel and their conspirators. The Chinese

investors in *Li* claimed they had each invested $500,000 and paid $40,000 in associated fees to

invest in the Palm House Hotel through the EB-5 immigrant investor visa program. *See id.* ¶ 2.

Instead of remaining in an escrow account and then using the investment funds to create jobs for

qualifying workers, "Plaintiffs' funds were stolen and transferred from an escrow account to

other accounts and pillaged for the personal pleasure of the conspirators." *Id.*  ¶¶ 3-5. The

conspirators allegedly stole the investors' funds to buy homes, luxury cars, a yacht, and to pay

off their personal debts. *Id.* ¶ 8.

The *Li* Amended Complaint alleged, as here, that the investors were told their money

would remain in an escrow account until USCIS approved their I-526 petitions. *Id.* ¶ 3. The *Li*

plaintiffs claimed that the conspirators, including the South Atlantic Regional Center, made

---

[3]     The *Li* Amended Complaint includes fifty-five Chinese investors who were victims of fraud involving the Palm House Enterprise. *See Li* Am. Compl. ¶¶ 1-2. Because the United States is not a party to the *Li* matter, Defendant has been unable to confirm the extent to which the individual Chinese investors in the *Li* matter and the instant case overlap. There are, however, at least sixteen individuals in the instant Complaint who share the same name as a plaintiff named in the *Li* matter. This, along with the nature of the allegations and claims in the two cases, suggests that there may be overlap in the Chinese investors who comprise the two groups of plaintiffs.

several false promises and misrepresentations, including that the Palm House Hotel was to be completed for the 2013-2014 season. *Id.* ¶ 13(c)(v). As in this Complaint, the *Li* complaint claimed that the investors in the Palm House Hotel lost their investments and fees, no jobs were created, and none of the investors obtained visas.

On January 9, 2020, thirteen Chinese investors brought a lawsuit in this District against Defendant under the same theories presented now. *See generally* Complaint, *Chen, et al v. United States of America*, Civ. A. No. 20-0058 (RC) (the "Chen Complaint") (Def.'s Ex. 2). The *Chen* Complaint is nearly identical to the present Complaint and shares many overlapping allegations with the *Li* Amended Complaint as well.

**LEGAL STANDARD**

## I.   <u>Rule 12(b)(1)</u>

Rule 12(b)(1) provides for the dismissal of an action for lack of subject matter jurisdiction. Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). It is the plaintiff's burden to establish that the Court has subject matter jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

In evaluating a Rule 12(b)(1) motion, the Court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged[.]" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (citation omitted); *see also Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005). "Nevertheless, the court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the

9

complaint, nor must the Court accept plaintiff's legal conclusions." *Reiff v. United States*, 107 F. Supp. 3d 83, 85-86 (D.D.C. 2015) (citation omitted).

In deciding a Rule 12(b)(1) motion, the Court is not limited to the allegations on the face of the Complaint. The Court may also "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (citation omitted); *see also Reiff*, 107 F. Supp. 3d at 86; *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000) ("[A] court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case.").

## II.   <u>Rule 12(b)(6)</u>

A Rule 12(b)(6) motion to dismiss tests whether the pleader accomplished what it was obligated to do under the federal rules. A claim will fail this test if it asserts a legal theory not cognizable as a matter of law or if the factual tale it alleges is implausible. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). The pleading must demonstrate that the allegations "possess enough heft" to show a plausible entitlement to relief. *Id.* at 557. Although a complaint need not contain detailed factual allegations, it must allege enough facts to raise a plaintiff's claims beyond the level of speculation and must "nudge" the claims "across the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (citation omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (alterations in original).

When a claim is challenged under Rule 12(b)(6), the Court presumes that all well-pleaded allegations are true, resolves all reasonable doubts and inferences in the pleader's favor, and views the pleading in the light most favorable to the non-moving party. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 249 (2009); *Twombly*, 550 U.S. at 555; *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997).

"When evaluating a Rule 12(b)(6) motion to dismiss, a court generally does not consider matters beyond the pleadings." *R.J. Reynolds Tobacco Co. v. Dep't of Agric.*, 130 F. Supp. 3d 356, 369 (D.D.C. 2015) (citation omitted). But the Court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint . . . or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss[.]" *Ward v. D.C. Dep't of Youth Rehab. Servs.,* 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (internal citations omitted); *see also St. Francis*, 117 F.3d at 624. Moreover, "a court may take judicial notice of all relevant facts that are shown by the court's own records, as well as public records from other proceedings." *Bell v. Dep't of Def.,* Civ. A. No. 16-2403, 2018 U.S. Dist. LEXIS 166068, at *38 (D.D.C. Sep. 27, 2018) (citation omitted) (quoting *Budik v. Ashley*, 36 F. Supp. 3d 132, 142 (D.D.C. 2014)).

## ARGUMENT

### I.  <u>Plaintiffs Failed to Exhaust Their Administrative Remedies</u>

To begin, the Court lacks jurisdiction over this matter because Plaintiffs have not exhausted their administrative remedies. The FTCA "provides that an 'action shall not be instituted upon a claim against the United States for money damages' unless the claimant has first exhausted his administrative remedies." *McNeil v. United States*, 508 U.S. 106, 107 (1993) (quoting 28 U.S.C. § 2675(a)); *see also* 28 U.S.C. § 2401(b) ("A tort claim against the United

States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . .”). A claimant may only bring an action in federal court under the FTCA after having “first presented the claim to the appropriate Federal agency.” 28 U.S.C. § 2675(a). This is the “presentment requirement” of the FTCA. *See Sanchez-Mercedes v. Bureau of Prisons*, 453 F. Supp. 3d 423 (D.D.C. 2020); *McNeil*, 508 U.S. at 111.

The standard for determining whether the presentment requirement is satisfied in this Circuit is set forth in *GAF Corp. v. United States*, 818 F.2d 901 (D.C. Cir. 1987), which determined that the FTCA’s presentment requirement is a jurisdictional prerequisite. *Id.* at 917. Specifically, “Section 2675(a) requires a claimant to file (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum-certain damages claim.” *Id*. at 919–20. Plaintiffs fail the FTCA’s presentment requirement.

Although Plaintiffs assert that they exhausted their administrative remedies and “duly filed Form 95 with USCIS in August 2021,” Compl. ¶¶ 10, 15, USCIS has no record of receiving any such forms. As stated in the declaration of USCIS official Vita Kirksey, “USCIS has received no administrative tort claims from any individual plaintiff, plaintiffs’ counsel, or any other representative of plaintiffs in the above captioned case. The first time USCIS was made aware of any tort claims from these plaintiffs was when the above captioned FTCA lawsuit was filed on September 29, 2023, and service was perfected on the United States Attorney’s Office in Washington, D.C. USCIS has not been provided notice of these claims in accordance with 28 U.S.C. § 2401(b).” *See* Def. Ex. 3, Kirksey Decl., ¶ 7.

Accordingly, this Complaint must be dismissed because Plaintiffs failed to present notice of their claims to the appropriate federal agency prior to filing this FTCA action.

II.    **This Lawsuit is Barred by Sovereign Immunity**

A.    **The FTCA's Limited Waiver of Sovereign Immunity**

"The United States is immune from suit absent an express waiver of its sovereign immunity." *Kugel v. United States*, 947 F.2d 1504, 1506 (D.C. Cir. 1991). The FTCA is such a waiver, authorizing claims for damages against the United States in response to certain tortious actions of government employees, but only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Lewis v. United States*, 83 F. Supp. 3d 198, 205 (D.D.C. 2015) (quoting 28 U.S.C. § 1346(b)(1)); *see also Gross v. United States*, 771 F.3d 10, 12 (D.C. Cir. 2014); *Tri-State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003); *FDIC v. Meyer*, 510 U.S. 471, 477 (1994).

A waiver of sovereign immunity must be "strictly construed, in terms of its scope, in favor of the sovereign." *Tri-State Hosp.*, 341 F.3d at 575 (quoting *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999)). A party suing the United States under the FTCA bears the burden of proving that the government has unequivocally waived its immunity for the type of claim involved. *Id.*

Sovereign immunity and the FTCA's exceptions are jurisdictional issues. *See Meyer*, 510 U.S. at 475 ("Sovereign immunity is jurisdictional in nature."); *Loughlin v. United States*, 393 F.3d 155, 162 (D.C. Cir. 2004) (stating that FTCA exceptions are "barrier[s] to subject matter jurisdiction").

B.    **The Discretionary Function Exception Bars Plaintiffs' Claims**

The FTCA's limited waiver of sovereign immunity excludes, among other types of claims, "[a]ny claim based upon . . . the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the

13

Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). For the so-called "discretionary function exception" to apply, the challenged act must be: 1) "discretionary in nature," meaning it involves "an element of judgment or choice"; and 2) "based on considerations of public policy." *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991) (internal quotation marks and citations omitted); *see also Macharia v. United States*, 334 F.3d 61, 65 (D.C. Cir. 2003). On the first part of the test, "[t]he requirement of judgment or choice is not satisfied if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Gaubert*, 499 U.S. at 322 (internal quotation marks omitted). On the second part of the test, "the question is not whether a government agent actually weighed policy considerations in making a particular choice; rather, the test is satisfied if the type of choice at issue is susceptible to policy considerations." *Donahue v. United States*, 870 F. Supp. 2d 97, 105 (D.D.C. 2012).

As the Supreme Court has stated, the discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *Shuler v. United States*, 531 F.3d 930, 933 (D.C. Cir. 2008) (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense* ("*Varig Airlines*"), 467 U.S. 797, 808 (1984)). The exception's purpose is to "prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Gaubert*, 499 U.S. at 323 (quoting *Varig Airlines*, 467 U.S. at 814).

In this case, the Complaint alleges that USCIS employees knew, or should have known, through its review of I-526 petitions in connection with the Walsh Projects that the conspirators behind the projects made numerous material misrepresentations to investors regarding the

projects. Compl. ¶¶ 36-43. Plaintiffs further allege USCIS should have conducted inspections of USREDA and the South Atlantic Regional Center and its corporate books because USCIS was on notice of the fraud as a result of its review of the I-526 petitions. *Id.* ¶¶ 7-8, 24, 27, 30, 46. The Complaint asserts that USCIS should have inspected the projects associated with Plaintiffs' investments, the Walsh Projects, and "shut down" USREDA, the South Atlantic Regional Center, and the Walsh Projects. *Id.* ¶¶ 7, 30, 46. In general, Plaintiffs allege that "no corrective or supervisory action was taken against Walsh, USREDA," the South Atlantic Regional Center. *Id.* ¶ 46. Plaintiffs concede, however, that USCIS terminated the South Atlantic Regional Center's designation as a regional center in December 2019. *Id.* ¶ 58.

In cases with analogous fact patterns and claims but involving a different oversight agency, the SEC, Federal courts in this and other jurisdictions have held that the discretionary function exception precludes FTCA claims brought by investors seeking to recover damages for injuries allegedly resulting from the SEC's failure to uncover and terminate Ponzi schemes in a timely manner. *See generally Zelaya v. United States*, 781 F.3d 1315 (11th Cir. 2015); *Baer v. United States*, 722 F.3d 168 (3d Cir. 2013); *Molchatsky v. United States*, 713 F.3d 159 (2d Cir. 2013); *Dichter-Mad Family Partners, LLP v. United States*, 709 F.3d 749 (9th Cir. 2013); *Donahue*, 870 F. Supp. 2d 97.

In *Donahue*, for example, another court in this District considered the application of the discretionary function exception to an FTCA case brought by former investors in, and victims of, the Bernard Madoff Ponzi scheme. Plaintiffs alleged the SEC committed "serial, gross negligence" in its investigations of Madoff and his firm resulting in Plaintiffs losing more than two million dollars. *Donahue*, 870 F. Supp. 2d at 100. Plaintiffs argued the SEC breached a duty of care to them and other investors and a duty to warn investors that Madoff was engaged in a

Ponzi scheme. *Id.* at 102. The United States moved to dismiss for lack of subject matter jurisdiction, arguing that "the actions taken by SEC staffers in the course of the agency's Madoff inquiries that allegedly harmed the plaintiffs were discretionary within the meaning of the FTCA." *Id.* at 101. The government maintained that such actions were immune from FTCA liability because they were intertwined with the SEC's "quintessentially discretionary" power to commence civil proceedings against suspected wrongdoers. *Id.* at 101.

The relevant statutory authority (15 U.S.C. § 78u(a)(1)) authorized the SEC to "in its discretion, make such investigations as it deems necessary." The *Donahue* court thus determined that the SEC's use of its investigative power involved an element of judgment or choice under the first part of the discretionary function exception test. *Id.* at 105-07 (citing *Sloan v. Dep't of Hous. & Urban Dev.*, 236 F.3d 756, 762 (D.C. Cir. 2001)). "The sifting of evidence, the weighing of its significance, and the myriad other decisions made during investigations plainly involve elements of judgment and choice." *Id.* at 107. As to the second part of the test, the *Donahue* court noted "if a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulation." *Id.* (citing *Gaubert*, 499 U.S. at 324). "When regulators 'exercise[ ] their discretion to choose from various courses of action,' including choices that involve 'operational' and 'day-to-day decisions,' the presumption attaches that such choices are made in furtherance of the policies underlying the regulators' authority." *Id.* (quoting *Gaubert*, 499 U.S. at 332). The choices the SEC makes in investigating require consideration of the optimal management of time, effort, and resources, and thus are susceptible to policy analysis. *Id.* at 112. Accordingly, the investors' claims were barred by the discretionary function exception. *Id.*

As the *Donahue* court similarly reasoned, Plaintiffs here can "succeed only by identifying [USCIS] conduct that violated compulsory duties or was not susceptible to policy analysis." *Id.* at 109. As further explained below, Plaintiffs have identified neither.

## C.     The Challenged Acts Are Discretionary in Nature

As to the first part of the test, determinations regarding the inspection and termination of a regional center plainly involve elements of judgment and choice. *See Donahue*, 870 F. Supp. 2d at 105-07; *Loumiet v. United States*, 828 F.3d 935, 942 (D.C. Cir. 2016) (stating that "a decision by a [federal agency] to bring an action pursuant to its broad statutory enforcement authority" ordinarily qualifies for the discretionary function exception); *Shuler*, 531 F.3d at 934 (holding that law enforcement official's decisions regarding how to conduct an investigation fell within the discretionary function); *Sloan*, 236 F.3d at 760-61 (holding that a federal agency's decision to initiate administrative action was subject to the discretionary function exception); *see also Varig Airlines*, 467 U.S. at 813-14 ("[W]hatever else the discretionary function exception may include, it plainly was intended to encompass the discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals.").

Plaintiffs assert that, based on the information available to it, USCIS should have inspected USREDA, the South Atlantic Regional Center, and the Walsh Project sites and terminated the South Atlantic Regional Center's regional center designation earlier than it did.[4] Compl. ¶¶ 7-8, 24, 27, 30, 46. But Plaintiffs have failed to provide any authority in support of a claim that USCIS's conduct, or its failure to act in the manner and timeframe Plaintiffs desired,

---

[4]     Plaintiffs assert USCIS should have "shut down" the Walsh Projects and USREDA but have identified no authority under which USCIS could have taken such an action. Compl. ¶ 46. Unlike the South Atlantic Regional Center, the Walsh Projects and USREDA were not a USCIS-designated regional center subject to the regulatory framework at 8 C.F.R. § 204.6(m)(3)-(6).

violated a course of action prescribed by statute, regulation, or policy. *See Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988). Plaintiffs allege "USCIS has always had the power to close or inspect EB-5 Regional Centers when such circumstances dictate." Compl. ¶ 9. Yet, having the authority to take an action, such as inspecting or terminating a center, is not the same as having a compulsory duty to do so.

As noted above, neither the Appropriations Act that initially created the Regional Center Program nor the INA prescribed a specific course of action for USCIS employees to follow in monitoring, inspecting, or even terminating regional centers. Moreover, neither any implementing regulation nor policy created a compulsory duty to inspect regional centers or affiliated projects with pending or denied I-526 petitions, such as the Walsh Projects. The determination to issue a notice of intent to terminate the South Atlantic Regional Center's regional center designation must have been based on the regional center's failure to promote economic growth or to provide required information or pay the required fee. 8 C.F.R. § 204.6(m)(6)(ii). Indeed, determining whether a regional center continued to serve the purpose of promoting economic growth and whether (or when) termination of the regional center's designation was warranted involved substantial elements of judgment. *See Sloan*, 236 F.3d at 760 (finding that a determination whether broadly stated conditions exist involves "substantial elements of judgment," such as assessing adequacy of evidence, availability of information, credibility, corroboration, and what inferences can reasonably be drawn as a result).

### D.    The Challenged Acts Are Based on Considerations of Public Policy

On the second part of the test, the choices USCIS must have considered in administering the regional center program with respect to the South Atlantic Regional Center, including whether and when to inspect a regional center or investment project, were unquestionably the type of discretionary government decisions susceptible to policy considerations and which

Congress does not want the judiciary "second-guessing." *See Varig Airlines*, 467 U.S. at 819-20 (holding that the FAA's implementation of a mechanism for compliance review is plainly discretionary activity of the "nature and quality" protected by § 2680(a), because such decisions require the agency to establish priorities for the accomplishment of its policy objectives by balancing the objectives sought to be obtained against such practical considerations as staffing and funding); *Berkovitz*, 486 U.S. at 539 (stating that Congress intended to prevent "judicial intervention in . . . the political, social, and economic judgments of governmental—including regulatory—agencies").

As explained above, the regulatory requirements for the South Atlantic Regional Center to have maintained regional center designation are found in 8 C.F.R. § 204.6(m)(6). To continue participation in the program, the regional center must have met the requirements of Section 610(a) of the Appropriations Act. That is to say, the regional center must have continued to promote economic growth, including increased export sales, improved regional productivity, job creation, and increased domestic capital investment. The regional center must have also demonstrated that it is continued to promote economic growth by providing USCIS with updated information on an annual basis or as otherwise requested by USCIS. That is a quintessential policy determination.

Moreover, as also noted above, pursuant to 8 C.F.R. § 204.6(m)(6)(ii), USCIS would issue a notice of intent to terminate a regional center for one of two reasons: (1) the regional center fails to submit the required information or pay the associated fee or (2) "USCIS determines that the regional center no longer serves the purpose of promoting economic growth." While the failure to submit a form or pay a fee may not be, surely the question of whether a regional center is serving the purpose of promoting economic growth is susceptible to policy

analysis. In this case, Plaintiffs do not allege USCIS should have terminated the South Atlantic

Regional Center because it failed to submit a form on time or pay an associated fee. Instead,

Plaintiffs claim USCIS should have terminated it earlier because the I-526 petitions Plaintiffs

and other foreign investors submitted should have alerted USCIS to fraudulent activity. Evidence

regarding fraudulent activity may, depending on a variety of considerations, implicate the second

possible ground for terminating a regional center; that is, whether the regional center no longer

serves the purpose of promoting economic growth. *See, e.g.*, *Path America KingCo LLC v. Dep't

of Homeland Sec.*, 426 F. Supp. 3d 770 (W.D. Wa. 2019). But similar to the SEC's broad

discretion in deciding how best to investigate or prosecute possible securities law violations,

*Donahue*, 870 F. Supp. 2d at 106-07, USCIS's employees must exercise their discretion to

choose between various courses of action in deciding how best to enforce the requirement that a

regional center must continue to serve the purpose of promoting economic growth. Though

occurring in different contexts, the decisions are equally susceptible to policy considerations.

     For example, as part of its oversight of the Regional Center Program under the prior and

relevant statutory scheme, USCIS would conduct compliance reviews of regional centers to

verify information provided in regional center applications and annual certifications.[5]

Compliance reviews were intended to verify compliance with applicable laws and authorities to

ensure continued eligibility for the regional center designation. An auditor's review may have

included researching information in government systems, reviewing commercial and public

records, or reviewing evidence that accompanies regional center applications and certifications.

The compliance review may also have included obtaining information, on a consensual basis,

---

[5]    The authority to conduct compliance reviews derives from 8 U.S.C. § 1357(b) and 8 C.F.R. § 287.5(a)(2), Department Delegation 0150.1, and the statutes and regulations that govern EB-5 adjudications.

through data requests and site assessments. But again, the choices of whether to conduct a compliance review of a regional center, how to conduct the compliance review, what information to request, and more were all susceptible to policy considerations. They required USCIS employees to consider how best to manage the Agency's time, effort, and resources. *See Donahue*, 870 F. Supp. 2d at 112. Moreover, there was no compulsory duty in any statute, regulation, or policy that required USCIS to conduct compliance reviews of regional centers. Such compliance reviews were entirely discretionary.

In this case, USCIS did, in fact, terminate the South Atlantic Regional Center's regional center designation on December 10, 2019, upon finding that it no longer served the purpose of promoting economic growth. *See* 8 C.F.R. § 204.6(m)(6)(ii)(B). Of course, the termination did not happen as soon as Plaintiffs desired. But there was no requirement that USCIS take any particular inspection or regulatory action (such as conducting compliance review, site visit, or issuing a notice of intent to terminate) against a regional center that it suspected was no longer serving the purpose of promoting economic growth within a specific timeframe. They were all discretionary functions.

**III.**   **Plaintiffs' Claims Are Barred by the FTCA's Misrepresentation Exception**

Plaintiff's Complaint at some points appears to be asserting a tort claim of government misrepresentation or failure on the part of USCIS to communicate correct information. *See, e.g.*, Compl. ¶¶ 36-43. Any such claim is barred by the FTCA's "intentional tort exception" which "preserves the Government's immunity from suit for '[a]ny claim arising out of . . . misrepresentation [or] deceit.'" *Millbrook v. United States*, 569 U.S. 50, 52, (2013) (quoting 28 U.S.C. § 2680(h)).

This broad exception covers "claims arising out of negligent, as well as willful, misrepresentation." *United States v. Neustadt*, 366 U.S. 696, 702 (1961); *Scanwell Labs., Inc. v.*

*Thomas*, 521 F.2d 941, 948 (D.C. Cir. 1975). "[T]he essence of an action for misrepresentation, whether negligent or intentional, is the communication of misinformation on which the recipient relies." *Williams v. United States*, Civ. A. No. 17-0783, 2017 WL 11493266, at *4 (D.D.C. Nov. 1, 2017) (quoting *Block v. Neal*, 460 U.S. 289, 296 (1983)). As the Supreme Court has made clear, a plaintiff may not circumvent the bar by recasting an intentional tort claim as one for negligence. *United States v. Shearer*, 473 U.S. 52, 55 (1985) ("it is inescapable that the phrase 'arising out of' … is broad enough to encompass claims sounding in negligence"); *Hernandez v. United States*, 34 F. Supp. 3d 1168, 1182 (D. Colo. 2014) ("A plaintiff may not simply recast an intentional tort claim as one for simple negligence to circumvent the bar of 2680(h)."). That is exactly what Plaintiffs do here.

At their heart, Plaintiffs' claims rest on an alleged injury as a result of being victims of deceit and misrepresentation committed by the conspirators of the Walsh Projects. Plaintiffs have now attempted to recast those torts as negligence claims imputed to the United States. Such claims are excepted from the FTCA's waiver of sovereign immunity and should be dismissed for lack of subject matter jurisdiction.

## IV.     Plaintiffs Fail to Identify Any Analogous Tort Duties Under Local Law

The Complaint must also be dismissed for lack of subject matter jurisdiction because Plaintiffs fail to identify an analogous state tort cause of action for either of the two counts. In the first count of "negligence," Plaintiffs allege generally that USCIS's employees breached a duty to exercise reasonable care because they "failed to act after having actual knowledge [of] clear 'red flags' of fraud and irregularities at USREDA and" South Atlantic Regional Center. Compl. ¶ 60. In the second count, USCIS's employees allegedly breached their fiduciary duty to the Plaintiff investors by "taking control" of their I-526 petitions despite their knowledge that the petitions could not be approved. *Id.* ¶ 67.

The FTCA waives the United States' sovereign immunity "only to the extent that a private person in like circumstances could be found liable in tort under local law." *Art Metal-USA, Inc. v. United States*, 753 F.2d 1151, 1157 (D.C. Cir. 1985). "Accordingly, negligent non-performance of a duty created by a federal regulation can give rise to an FTCA claim only if local tort law recognizes an analogous duty." *Lewis*, 83 F. Supp. at 209; *see also Hornbeck Offshore Transp., LLC v. United States*, 569 F.3d 506, 508 (D.C. Cir. 2009) ("Violations of federal law–when not accompanied by any local law violation–cannot support a suit under the FTCA."); *Art Metal-USA*, 753 F.2d at 1157 ("It is true that negligent performance (or failure to perform) duties embodied in federal statutes and regulations may give rise to a claim under the FTCA, but only if there are analogous duties under local tort law."). "If there is no local law under which a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred, sovereign immunity has not been waived." *Hornbeck*, 569 F.3d at 510 (internal quotations omitted).

"[T]he D.C. Circuit has explained that because the FTCA waives sovereign immunity only as to claims where the government would be liable under local law, and because that waiver is 'coextensive with the district court's subject matter jurisdiction to hear the case,' the government's 'arguments against [a plaintiff's] proposed local analogs' actually go to the Court's subject matter jurisdiction." *Lewis*, 83 F. Supp. 3d at 209 n.11 (citing *Hornbeck*, 569 F.3d at 512) (alterations in original).

The Complaint fails to identify any local tort law under which a private person would be liable to Plaintiffs in accordance with the law of the place where the act or omission occurred. Based on Plaintiffs' allegations, it appears as though any state tort on which it might rely would be found under the laws of (1) Florida, where the Walsh Projects, USREDA, and the South

Atlantic Regional Center were located and any site visit or inspection would have taken place, or (2) the District of Columbia, where USCIS is headquartered and its employees with responsibility for adjudicating the investors' I-526 petitions and reviewing USREDA's and the South Atlantic Regional Center's submissions are located.

The activities at issue in this case—administering the EB-5 visa program and adjudicating individual investors' petitions for immigration benefits—are "uniquely governmental functions" that suggest no obvious analogue among private actors. *See Zelaya*, 781 F.3d at 1324 (quoting *Indian Towing Co. v. United States*, 350 U.S. 61, 64 (1955)). The only basis for Plaintiffs' claim is by reference to a federal statute—not any state or local law.[6] The Complaint alleges essentially that USCIS employees failed to perform duties imposed by federal law. This cannot support a suit under the FTCA. *See Hornbeck*, 569 F.3d at 508; *Zelaya*, 781 F.3d at 1324 (stating that "state tort cause of action is a *sine qua non* of FTCA jurisdiction").

Indeed, the D.C. Circuit has stated that "[i]t is virtually axiomatic that the FTCA does not apply where the claimed negligence arises out of the failure of the United States to carry out a [federal] statutory duty in the conduct of its own affairs." *Hornbeck*, 569 F.3d at 509 (citations omitted). An FTCA claim is not necessarily barred if it is partially related to a federal statute, because the ultimate inquiry is whether there is a proper local analog. But when "a claim is 'wholly grounded on a duty' created by a federal statute such that there is no local law that could support liability of a private party for similar actions, the FTCA does not apply." *Id.* at 510

---

[6]     *See* Compl. Counts I, II, ¶¶ 59-68, alleging USCIS violated 28 U.S.C. § 2680. However, it should be noted that not only do Plaintiffs improperly cite to a federal statute as the basis for their FTCA action, their reliance on 28 U.S.C. § 2680 as the genesis for their FTCA cause of action is further misplaced because Section 2680 lists the statutory exceptions to the FTCA.

(quoting *Johnson v. Sawyer*, 47 F.3d 716, 729 (5th Cir. 1995)). This Court should thus dismiss this action because Plaintiffs failed to identify a valid state tort cause of action.

## V.    **The Complaint is Time Barred**

Even if the Court had jurisdiction over Plaintiffs' causes of action, the Complaint should nonetheless be dismissed as time barred. A tort claim under the FTCA is untimely and "'shall be forever barred' unless it is presented to the 'appropriate Federal agency within two years after such claim accrues' and then brought to federal court 'within six months' after the agency acts on the claim." *United States v. Kwai Fun Wong*, 575 U.S. 402, 405 (2015) (quoting 28 U.S.C. § 2401(b)). In *Kwai Fun Wong*, the Supreme Court clarified that the two-year and six-month limitations periods in the FTCA were non-jurisdictional and subject to equitable tolling. *Id.* at 410-12; *see also Jackson v. Modly*, 949 F.3d 763, 766 (D.C. Cir. 2020); *Montes v. Janitorial Partners, Inc.*, 859 F.3d 1079, 1084 (D.C. Cir. 2017) (stating that, when filing prerequisite is not jurisdictional, it goes to whether plaintiff stated claim, not whether he established subject matter jurisdiction).

Thus, dismissal on statute-of-limitations grounds is appropriate if the allegations on the face of the complaint, including any documents attached as exhibits or incorporated by reference, or upon which a plaintiff's complaint necessarily relies, demonstrate that the complaint is time-barred. *Compare Hagan v. United States*, 197 F. Supp. 3d 30, 36-37 (D.D.C. 2016) (finding dismissal for failure to state a claim not warranted in medical malpractice action because it was not clear from the face of the complaint that it was time-barred), *with Warren v. CIA*, 210 F. Supp. 3d 199, 202-03 (D.D.C. 2016) (granting the government's motion to dismiss because plaintiff failed to present the claims within two years of their accrual); *Williams*, 2017 WL 11493266, at *6 (concluding that plaintiffs' claims would be dismissed for failure to state a claim

if the Court had jurisdiction to hear them because they were time-barred under the FTCA's

statute of limitations and the plaintiffs were not entitled to equitable tolling).

"A claim generally accrues when an injury occurs." *Williams*, 2017 WL 11493266, at *6

"If the more flexible 'discovery rule' applies, however, a claim 'accrues when the injured party

discovers—or in the exercise of due diligence should have discovered—that it has been

injured.'" *Id.* (quoting *Hardin v. Jackson*, 625 F.3d 739, 743 (D.C. Cir. 2010)); *see also Hagan v.*

*United States*, 275 F. Supp. 3d 252, 258 (D.D.C. 2017) (quoting *Sexton v. United States*,

832 F.2d 629, 633 (D.C. Cir. 1987) ("[A] claim accrues under the FTCA 'by the time a plaintiff

has discovered both his injury and its cause, even though he is unaware that the harm was

negligently inflicted.'")); *Warren*, 210 F. Supp. 3d at 202.

"[A] litigant is entitled to equitable tolling of a statute of limitations only if the litigant

establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some

extraordinary circumstance stood in his way and prevented timely filing.'" *Menominee Indian*

*Tribe of Wisc. v. United States*, 136 S. Ct. 750, 755 (2016) (quoting *Holland v. Florida*, 560 U.S.

631, 649 (2010)) (internal quotation marks omitted); *see also N.Y. Republican State Comm. v.*

*SEC*, 799 F.3d 1126, 1134 (D.C. Cir. 2015); *Hagan*, 197 F. Supp. 3d at 33 n.4.

Plaintiffs' claims in this action are time-barred. Plaintiffs claim they were injured when

their EB-5 investment funds and associated fees were misappropriated by the Walsh Projects

conspirators instead of being used for the development of the projects. *See* Compl. ¶¶ 5-7, 76-78.

Notably, the Complaint is silent regarding the timing of the alleged misappropriation. Based on

the timing of the Chinese investors' *Li* complaint in the Southern District of Florida, however,

those losses must have occurred before November 14, 2016, which is the date the original *Li*

complaint was filed. It is unnecessary to pinpoint the precise dates the investors' funds were

misappropriated by the conspirators behind the Walsh Projects because it is sufficient for purposes of this Motion that it occurred prior to November 14, 2016.

Even applying the more lenient discovery rule, it is apparent from the allegations on the face of the Complaint that November 14, 2016, is the latest possible date that Plaintiffs discovered, or in the exercise of due diligence should have discovered, they were injured. *See Williams*, 2017 WL 11493266, at *6. Plaintiffs therefore had two years from that date (i.e., until November 13, 2018) to present an administrative tort claim to USCIS or to its parent agency, the Department.

Moreover, Plaintiffs' Complaint explicitly shows they were put on notice at least as early as 2018 that their investments were entangled in the Walsh Projects' fraud. Plaintiffs claim they "filed Form 95 with USCIS in August 2021 to place Defendant on notice of their claims." Compl. ¶ 15. Notwithstanding that USCIS never received notice of their claims, Plaintiffs admit that the fraud scheme related to their investments that gave rise to this action became public knowledge "[o]n August 3, 2018, when the [SEC] filed a Complaint against Palm House, the South Atlantic Regional Center, Walsh, and non-party Robert Matthews in the related case of" *SEC v. Palm House Hotel LLLP*, Civ. A. No. 18-81038 (S.D. Fla.). Comp. ¶ 54. August 3, 2018, is three years prior to August 2021 when Plaintiffs claim they submitted notice of their claims to USCIS.

Yet Plaintiffs' attorney filed an identical FTCA lawsuit in this district on January 13, 2020, *Chen*, arising out of the same transaction and occurrence as the instant case, alleging the plaintiffs in that case "are thirteen Chinese investors who sought citizenship in this country under the Federal 'EB-5' visa program . . . They are among 90 victims of the Palm House Hotel EB-5 fraud which has received significant media coverage, led to enforcement actions by the SEC, and

criminal indictments of its promoters[.]" *See* Def.'s Ex. 2 ¶ 2. Compare this to the Complaint presently before the Court, filed by the same attorney in *Chen*, alleging the "Plaintiffs are 26 Chinese investors who sought citizenship in this country under the Federal 'EB-5' visa program . . . They are among over 100 victims of the frauds perpetrated in (a) the Palm House Hotel EB-5 project [ ] and (b) the Royal Palm Town Center EB-5 Project . . . which have received significant media coverage, led to enforcement actions by the SEC, criminal indictments of promoters, and civil judgments for damages." Compl. ¶ 2.

The current Plaintiffs are members of the same class of plaintiffs cited by their attorney in the *Chen* complaint filed in January 2020, all of whom were allegedly defrauded by the Walsh Projects which was sued by the SEC in August 2018. Compl. ¶ 54. *See also* Def.'s Ex. 2 ¶ 79 ("On August 3, 2018, the [SEC] filed a Complaint against Palm House, the South Atlantic Regional Center, Walsh, and Non-Party Robert Matthews in the related case of" *Palm House Hotel*, Civ. A. No. 18-81038.)

Moreover, it is of no legal significance that Plaintiffs may have been unaware that in addition to the claims the investors brought against the thirty plus defendants in the *Li* case that the investors may have had a separate cause of action against the United States. This Court draws a "distinction between the facts about what happened to the plaintiff, on the one hand, and the facts and standards by which those events were to be evaluated, on the other." *Hagan*, 275 F. Supp. 3d at 258 (citing *Kubrick*, 444 U.S. 111, 120, 123 (1979)). "Under *Kubrick*, the plaintiff has a duty to inquire; that is, the ultimate question is whether the plaintiff knew, or with reasonable diligence should have known of, both the injury and its cause." *Id.* (citing *Kubrick*, 444 U.S. at 120, 123; *In re Swine Flu Immunization Prod. Liab. Litig.*, 880 F.2d 1439, 1443 (D.C. Cir. 1989)).

Relatedly, equitable tolling does not apply because Plaintiffs cannot show 1) they were pursuing their rights diligently and 2) that some extraordinary circumstance stood in their way and prevented timely filing. *See Menominee Indian Tribe*, 136 S. Ct. at 755-56 (emphasizing that these two requirements of equitable tolling are elements that must be proven, rather than factors). An extraordinary circumstance in this context must be an "external obstacle to timely filing," meaning beyond a litigant's control. *See Williams*, 2017 WL 11493266, at *6 (quoting *Menominee Indian Tribe*, 136 S. Ct. at 756). Plaintiffs assert, in conclusory fashion, that they "are entitled to equitable tolling of all statutes of limitation to the extent necessary to facilitate justice." Compl. ¶ 10. This single conclusory allegation fails to satisfy Plaintiffs' burden of pleading equitable reasons to excuse their failure to comply with the FTCA's statute of limitations. Indeed, as explained above, plaintiffs asserting the exact same cause of action, against the same defendant, under the same legal theory, and represented by the same counsel filed suit in this District in 2020, nearly four years prior to the instant action. *See* Def.'s Ex. 2.

There is no doubt that the twenty-six Plaintiffs in the instant complaint, being members of the same class of investors in the identical *Chen* case filed in this District in 2020, and in the *Li* complaint filed in 2016, knew or should have known as early as 2018, and likely earlier in 2016, that they were victims of fraud. Any claims they had against the United States accrued, at the latest, on or before August 3, 2018, when the SEC filed its complaint against the Walsh Projects in which Plaintiffs invested. Yet Plaintiffs failed to present their claims to USCIS or the Department. Even if they had, such claims were presented well beyond two years past the date of the claims' accrual date. Plaintiffs' FTCA complaint is now time-barred, and the Court should dismiss for that reason.

**I.      The District of Columbia is an Improper Venue for this Action**

FTCA suits are to be brought in the judicial district in which the plaintiff resides, or where the act or omission complained of occurred. 28 U.S.C. § 1402(b). Any USCIS actions regarding oversight of the Walsh Projects would have occurred in Florida where the projects were located. A purpose of the projects was to solicit immigrant investors seeking EB-5 visa classification to invest in the development of a hotel and shopping center located in Florida. Plaintiffs all reside outside of Washington, D.C. in China, California, Florida, Massachusetts, and Washington. *See* Compl. at 1-2. Any acts or omissions committed by USCIS officials would have occurred in Florida, where Plaintiffs claim USCIS failed to adequately monitor the development projects. *See* Compl. ¶ 26 ("As of the filing of this Complaint, the Palm House remains a dangerous nuisance and a desolate construction wasteland. On information and belief, no personnel from USCIS *have ever* inspected the property.").

Even if some USCIS officials who adjudicate applications seeking an EB-5 immigrant investor visa, such as Plaintiffs', could have been located in or acted in Washington, D.C., it is well-settled that "the mere involvement on the part of federal agencies, or some federal officials who are located in Washington D.C. is not determinative of the question of venue." *Patel v. Phillips*, 933 F. Supp. 2d 153, 165 (D.D.C. 2013); s*ee also Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993) ("Courts in this circuit must examine challenges to personal jurisdiction and venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia. By naming high government officials as defendants, a plaintiff could bring a suit here that properly should be pursued elsewhere.").

There are insufficient ties to Washington, D.C. in this case. There are no allegations in Plaintiffs' Complaint of any acts or omission that occurred in this District. Venue would be

proper in states where Plaintiffs reside or in Florida, where the Walsh Projects sites are physically located.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendant's motion to dismiss and dismiss all claims with prejudice.

Dated: February 12, 2024

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By: /s/ *Kaitlin K. Eckrote*
    KAITLIN K. ECKROTE
    D.C. Bar #1670899
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    (202) 252–2485
    Kaitlin.Eckrote@usdoj.gov

*Attorneys for the United States of America*