UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PEIXUAN WANG et al.,

    *Plaintiffs*,

v.

UNITED STATES OF AMERICA,

    *Defendant*.

Civil Action No. 23-2810 (TJK)

### MEMORANDUM OPINION

    Plaintiffs are several Chinese citizens who sought visa classification as immigrant investors through the EB-5 Immigrant Investor Program. That program gives visa preferences to potential immigrants who invest in new commercial enterprises in the United States and create jobs here. Plaintiffs allege that they are among a larger group of victims of a fraud scheme involving two purported such commercial enterprises in Palm Beach, Florida. But Plaintiffs do not press claims against the alleged fraudsters in this case. Instead, they sue the United States under the Federal Tort Claims Act, alleging that employees for U.S. Citizenship and Immigration Services inadequately supervised the two projects. The United States moves to dismiss, arguing, among other things, that the Court lacks subject-matter jurisdiction because Plaintiffs did not present their claims to the agency before this case was filed. The Court agrees, and so it will grant the motion and dismiss the case for that reason.

**I.    Background**

    Through the Immigration Act of 1990, Congress created the Immigrant Investor Program, or the "EB-5" program. *See* Pub. L. No. 101-649, 104 Stat. 4978. That program allows foreign investors to become lawful permanent residents in the United States if they invest a certain amount in some new commercial enterprise and their investments create a certain number of jobs. *See* 8

U.S.C. § 1153(b)(5).  In 1992, Congress created a "Pilot Immigration Program" to help boost the EB-5 program.  *See* 1993 Appropriations Act, Pub. L. No. 102-395, § 610, 106 Stat. 1828, 1874 (1992).  This new program allowed immigrant investors to "satisfy the EB-5 employment-creation requirement by creating jobs *indirectly* through a minimum investment into a designated regional center."  *Da Costa v. Immigr. Inv. Program Off.*, 643 F. Supp. 3d 1, 5 (D.D.C. 2022) (emphasis added) (cleaned up).  A "regional center" is an "economic unit, public or private, which is involved with the promotion of economic growth, including increased export sales, improved regional productivity, job creation, and increased domestic capital investment."  8 C.F.R. § 204.6(e).

"An investor seeking permanent residency through the Regional Center Program follows a multi-step process."  *Hulli v. Mayorkas*, 549 F. Supp. 3d 95, 98 (D.D.C. 2021).  First, he must file an I-526 petition with U.S. Citizen and Immigration Services ("USCIS").  8 U.S.C. § 1154(a)(1)(H); 8 C.F.R. § 204.6(a).  If the petition is approved, he may be granted conditional permanent residency.  *See Hulli*, 549 F. Supp. 3d at 98.  And he may later seek to have that conditional status removed by filing an I-829 petition, which requires showing that the investment has created at least ten full-time jobs and must be filed ninety days before the two-year anniversary of the granting of conditional status.  *See* 8 C.F.R. § 216.6(c).  If any criteria are not met, the petition may be denied, thereby subjecting the investor to removal from the United States.  *See id.* § 216(d)(2).

Plaintiffs allege that they filed I-526 petitions with USCIS and invested the required minimum in two EB-5 projects, a hotel and shopping center in Palm Beach, Florida.  *See* ECF No. 2 ¶¶ 2, 4–5.  Those projects were associated with the South Atlantic Regional Center, or SARC, and the U.S. Regional Economic Development Authority Regional Center, or USREDA.  *Id.* ¶¶ 6, 7.  Each Plaintiff—along with the investment made for the purported construction and development of the projects—paid SARC and USREDA a substantial administrative fee, and some

2

paid them designated "legal fees" for preparing immigration paperwork. *See id.* ¶¶ 4–5, 32–35. In summary, Plaintiffs allege that USCIS accepted their I-526 petitions for processing, and USREDA and SARC approved Plaintiffs as accredited investors for the two projects, but their money was stolen, used to fund others' lavish lifestyles, and the projects remain incomplete. *Id.* ¶¶ 5–6, 26, 44–46. Indeed, they allege that several individuals associated with the projects have been subject to criminal charges or enforcement actions brought by the Securities and Exchange Commission for their conduct related to the projects. *Id.* ¶¶ 54, 55. And USCIS ended up denying their I-526 petitions. *Id.* ¶¶ 44–46.

Plaintiffs sued in September 2023. ECF No. 2. They bring two counts under the Federal Tort Claims Act ("FTCA"), arguing that the United States was (1) negligent and (2) breached a fiduciary duty to them, in continuing to accept and process their I-526 petitions and failing to safeguard their investments despite knowing about "red flags" of fraud at USREDA, SARC, and the two projects, including false representations made to them as investors. *Id.* ¶¶ 56–68. They also allege that "[a]ll statutory conditions precedent to the filing of this claim have been satisfied in that Plaintiffs duly filed a Form 95 with USCIS in August 2021 to place Defendant on notice of their claims but have not received any notice of any disposition of that notice." *Id.* ¶ 15.

The United States moves to dismiss on several grounds, including that this Court lacks subject-matter jurisdiction over their claims because Plaintiffs failed to present them to USCIS before suing. ECF No. 11.

## II. Legal Standard

"Federal courts are courts of limited jurisdiction . . . [and] [i]t is to be presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The party asserting jurisdiction bears the burden "of establishing the contrary." *Id.* For purposes of a Rule 12(b)(1) motion, the Court must "assume the truth of all material factual

3

allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (citation and internal quotation marks omitted). "Nevertheless, the court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions." *Reiff v. United States*, 107 F. Supp. 3d 83, 85–86 (D.D.C. 2015) (citation and internal quotation marks omitted). The Court is not limited to the allegations on the face of the complaint when considering a Rule 12(b)(1) motion. The Court may also "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015); *see also Reiff*, 107 F. Supp. 3d at 86; *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000) ("[A] court may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case.").

**III.    Analysis**

The FTCA extends a limited waiver of sovereign immunity, providing a remedy against the federal government for certain torts committed by federal employees in the scope of their employment. *See* 28 U.S.C. §§ 1346(b), 2680 (listing exceptions); *Sloan v. U.S. Dep't of Hous. & Urb. Dev.*, 236 F.3d 756, 759 (D.C. Cir. 2001). And courts must "strictly construe[]" a waiver of sovereign immunity "in terms of its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996). Under the FTCA, "an 'action shall not be instituted upon a claim against the United States for money damages' unless the claimant has first exhausted his administrative remedies." *McNeil v. United States*, 508 U.S. 106, 107 (1993) (quoting 28 U.S.C. § 2675(a)). To do so, a plaintiff must satisfy the requirement to "first present[] the claim to the appropriate Federal agency." 28 U.S.C. § 2675(a). One of the purposes of the presentment requirement is to "forc[e]

these cases through the administrative process [to] help[] sort out not only worthless claims, but also worthy ones, which may be settled at that stage." *Simpkins v. District of Columbia*, 108 F.3d 366, 371 (D.C. Cir. 1997). The D.C. Circuit has repeatedly held that "the FTCA's requirement of filing an administrative complaint with the appropriate agency prior to instituting an action [is] jurisdictional." *Id.*; *see, e.g.*, *GAF Corp. v. United States*, 818 F.2d 901, 917 (D.C. Cir. 1987) (referring to § 2675(a)'s presentment requirement as "The Jurisdictional Requirement of Presentment"). Because the requirement is jurisdictional, failure to satisfy it deprives the court of subject-matter jurisdiction over an FTCA claim, requiring dismissal. *See Simpkins*, 108 F.3d at 371.

To meet the FTCA's presentment requirement, it is not enough for a plaintiff to show that such a claim was mailed to the agency; he must show that it was actually *received*, especially when, as in this case, the agency asserts that it has no record of its receipt. Although the D.C. Circuit has not had the occasion to adopt this rule, courts in this Circuit routinely apply it. *See, e.g.*, *Doe v. United States*, No. 20-cv-3299 (DLF), 2021 WL 2935889, at *2 (D.D.C. July 13, 2021); *Davis v. United States*, 944 F. Supp. 2d 36, 39 (D.D.C. 2013); *see also Olaniyi v. District of Columbia*, 763 F. Supp. 2d 70, 87 n.16 (D.D.C. 2011) (citing cases). Moreover, almost every Court of Appeals to consider the issue has similarly required proof of agency receipt and has rejected application of the "mailbox rule"—which would establish a rebuttable presumption of receipt upon mere mailing—in the FTCA presentment context.[1] As several have noted, this "is

---

[1] *See Cooke v. United States*, 918 F.3d 77, 82 (2d Cir. 2019); *Barber v. United States*, 642 F. App'x. 411, 413–15 (5th Cir. 2016); *Lightfoot v. United States*, 564 F.3d 625, 628 (3d Cir. 2009); *Vacek v. U.S. Postal Serv.*, 447 F.3d 1248, 1252 (9th Cir. 2006); *Moya v. United States*, 35 F.3d 501, 504 (10th Cir. 1994); *Rhodes v. United States*, 995 F.2d 1063 (Table), 1993 WL 212495, at *2 (4th Cir. June 15, 1993); *Bellecourt v. United States*, 994 F.2d 427, 430 (8th Cir. 1993); *Willis v. United States*, 972 F.2d 350 (Table), 1992 WL 180181, at *2 (6th Cir. July 29, 1992); *Drazan v. United States*, 762 F.2d 56, 58 (7th Cir. 1985).

not an onerous requirement, as proof of receipt can easily be obtained by sending a claim by certified mail or by registered mail, or by obtaining acknowledgment of receipt from the agency itself." *Medina v. City of Philadelphia*, 219 F. App'x 169, 172–73 (3d Cir. 2007).

Plaintiffs allege that they "duly filed Form 95"—the prescribed form to present such claims—"with USCIS in August 2021 to place Defendant on notice of their claims but have not received any notice of any disposition of that notice." ECF No. 2 ¶ 15. But the record reveals that Plaintiffs have not met their burden of showing that the United States received their claims. *See Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005) (The court "may undertake an independent investigation" that examines "facts developed in the record beyond the complaint" to "assure itself of its own subject matter jurisdiction." (internal quotation marks omitted)). Plaintiffs' attorney submitted a declaration in which he attests that "Plaintiffs' Form 95 notices [were] sent to Defendant via USPS kiosk on August 21, 2021." ECF 13-1 at 1. He also attaches copies of their claim form and exhibits, and a credit card receipt showing a charge at a USPS kiosk on that date. *See* ECF Nos. 13-2, 13-3. But nowhere does counsel provide proof that USCIS actually *received* the claim form. To the contrary, counsel does not provide any return receipt for a certified or registered mailing, or any other acknowledgement from USCIS—in writing, or even via a follow-up phone call, for example—that the agency received it. Nor does counsel say, or the receipt show, the specific address to which he purportedly sent the claim form.[2]

---

[2] The claim form has an address for USCIS in Arlington, Virginia on it, but that does not show that it was mailed to that address (or more importantly, received there). In addition, the United States points out that the address for USCIS listed "is not the address for USCIS' General Counsel," which is located "in Camp Springs, Maryland," "and has been since May 19, 2020." ECF No. 15 at 5–6. But in concluding that Plaintiffs have not met the presentment requirement, the Court does not rely on that distinction, since the record is silent about whether the Arlington, Virginia address was a USCIS facility of some kind in August 2021, and the United States does not argue that a claim may be presented to USCIS only through receipt at its General Counsel's office.

For its part, the United States argues that "USCIS has no record of receiving" Plaintiffs' Form 95 notices.  ECF No. 11-1 at 21.  A USCIS employee avers that she has "access to records of administrative tort claims filed against USCIS" and is "familiar with the various procedures used to submit administrative tort claims to USCIS."  ECF No. 11-4 ¶ 5.  She also represents that "[a]ll administrative claims received by any USCIS office, wherever located, must be forwarded to [her] office.  And once received, we process the claim and administratively determine its merit." *Id.* ¶ 6.  But, she represents, "USCIS has received no administrative tort claims from any individual plaintiff, plaintiffs' counsel, or any other representative of plaintiffs in [this] case.  The first time that USCIS was made aware of any tort claims from these plaintiffs was when [this] FTCA lawsuit was filed" and service was perfected.  *Id.* ¶ 7.

On this record, the Court agrees with the United States that Plaintiffs have not met their burden of showing that they satisfied the presentment requirement because there is no proof that the agency received their claim form.  Simply put, that is enough to deny the Court subject-matter jurisdiction and warrant dismissal.  For even "assuming that [Plaintiffs'] attorney[] prepared and mailed [their] FTCA claim[s], that 'is not sufficient to comply with [the] FTCA.'"  *Doe*, 2021 WL 2935889, at *2 (quoting *Davis*, 944 F. Supp. 2d at 39).  "To satisfy [their] burden, [Plaintiffs] must 'show that [the] agency actually *received* the claim[s].'"  *Id*. (quoting *Davis*, 944 F. Supp. 2d at 39).  They have failed to do so here.

Further, even under the "mailbox rule" employed by the sole Court of Appeals to do so in this circumstance, the Court would still decline to find a presumption of receipt by USCIS.  *See Barnett v. Okeechobee Hosp.*, 283 F.3d 1232, 1240 (11th Cir. 2002).  In that case, the court held that to avail himself of the presumption, the plaintiff had to show, among other things, that the claim form was properly addressed.  *Id.*  In *Barnett*, the plaintiff represented that to mail his claim form to the agency, he used a pre-addressed postage-paid envelope that had been provided by an

7

agency employee. *Id*. at 1235. But here, even assuming that the Arlington, Virginia address reflected on Plaintiffs' claim form remained a valid one for USCIS for presentment purposes, Plaintiffs do not have similar proof that the envelope used to mail the form was accurately addressed to any USCIS location, including that one.[3]

### IV.  Conclusion

For all the above reasons, the Court will grant the motion and dismiss the case for lack of subject-matter jurisdiction.  A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: August 6, 2024

---

[3] Although the Court does not reach the issue, it notes that even if Plaintiffs had satisfied the presentment requirement in August 2021, their claims are very likely time-barred.  An FTCA claim is "forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after" the agency's denial of the claim.  28 U.S.C. § 2401(b).  But it appears the various lawsuits and enforcement actions mentioned in the complaint and the parties' briefing would have put Plaintiffs on notice of their alleged injuries well before August 2019, and Plaintiffs make little effort to argue that equitable tolling should apply.